UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM N. JACKSON, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) CAUSE NO. 3:18-CV-517 RLM-MGG |
| | ) |
| LAPORTE COUNTY SHERIFF'S DEPT., *et al.*, | ) |
| | ) |
| Defendants | ) |

OPINION AND ORDER

William Jackson alleges that he was wrongfully arrested and detained for more than 320 days in violation of his rights under the Fourth and Fourteenth Amendments and Indiana law. He sues the LaPorte County Sheriff's Department, LaPorte County, and Andrew Hynek (individually and in his capacity as a LaPorte County police officer). Cross-motions for summary judgment are before the court following oral argument on December 16, 2019. For the following reasons, the court grants the defendants' motion for judgment on Mr. Jackson's federal claims, denies Mr. Jackson's motion, and dismisses the remaining state law claims without prejudice for lack of jurisdiction.

I. *Standard of Review*

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Protective Life Ins. Co.

v. Hansen, 632 F.3d 388, 391-92 (7th Cir. 2011). The court must construe the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But inferences cannot be based on "speculation or conjecture," Herzog v. Graphic Packaging Int'l Inc., 742 F.3d 802, 806 (7th Cir 2014); Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc., 517 F.3d 470, 473 (7th Cir. 2008), and "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also* Dawson v. Brown, 803 F.3d 829, 833 (7th Cir. 2015). "[T]he requirement is that there be no genuine issue of material fact." *Id.* "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Egonmwan v. Cook County Sheriff's Dept., 602 F.3d 845, 849 (7th Cir. 2010) (quotation marks omitted).

## II. *Material Facts*

These events give rise to this action and are undisputed.

*June 22-23, 2016*

  A petition to revoke Mr. Jackson's probation was filed in LaPorte Superior Court in a cause number ending in "175." Mr. Jackson was arrested; his bond was set at $755.00.

*June 28, 2016*

  Gregory Brown, another inmate at the LaPorte County Jail, offered to bond Mr. Jackson out for $200.00. Mr. Jackson told his girlfriend to pay Mr. Brown's associate, Jeneva Sutton, the $200.00. Ms. Sutton used a stolen credit card to pay Mr. Jackson's $755.00 bond online through GovPayNet. Mr. Jackson was released.

*June 28-July 18, 2016*

  Sgt. (now Captain) Andrew Hynek uncovered irregularities in the bonding system at the LaPorte County Jail (which let people use credit cards to pay bonds online without verification that the person entering the credit card number is the credit card holder). Based on information from Mr. Brown's cellmate, recorded telephone conversations at the jail, and conversations with the actual credit card holders, Officer Hynek learned that between April 19, 2016 and July 7, 2016 Gregory Brown (with the assistance of Ms. Sutton and Shakiya Bunch) acquired and used stolen credit card information to pay his bond and the bonds of at least six other inmates, including Mr. Jackson, in exchange for cash and, in one instance, a car.

*July 18, 2016*

  An information was filed in the LaPorte Superior Court in a cause number ending in "620," charging Mr. Jackson with conspiracy to commit

fraud. Officer Hynek testified at the probable cause hearing before Judge Nancy Gettinger about his investigation of the credit card fraud scheme at the jail. Based on his testimony, Judge Gettinger found probable cause to issue arrest warrants for nine defendants, including Mr. Jackson, Gregory Brown, and Jeneva Sutton. She set the bond for each defendant at $20,000.00, cash only (meaning no corporate surety).

*July 22, 2016*

Mr. Jackson was arrested on the fraud charge. Officer Hynek interviewed Gregory Brown after the arrest warrants were executed.

*July 26, 2016*

A petition to revoke Mr. Jackson's probation based on the new fraud charge was filed in the '175 case.

*July 2016-June 2017*

Counsel appeared for Mr. Jackson in in the '620 case on Aug. 26, 2014. Mr. Jackson's bond was reduced to $1,000.00 cash on October 18, 2016. A bench trial was scheduled for April 2017, but was continued on the state's motion and reset for September 2017. Mr. Jackson was released on own recognizance in the '620 case on June 5, 2017.

*Feb 15, 2018*

An evidentiary hearing was held on the petition to revoke in the '175 cases. Officer Hynek testified that "[Gregory Brown] indicated [during the

interview on July 22, 2016] that the inmates within the cellblock knew how the system worked", and that "Mr. Jackson knew that a credit card was being used to get him out." Mr. Jackson's counsel asked the prosecutor to supplement the record with a copy of the video recording of Mr. Brown's interview, and she agreed to do so.[1]

*Feb 16, 2018*

After reviewing the video recording of Mr. Brown's interview, the prosecutor informed the court: (1) that the recording doesn't support Officer Hynek's recollection of what Gregory Brown said during the July 2016 interview; (2) that there was "some discussion of people kind of knew," but Mr. Brown "acknowledges that [he] didn't think anybody necessarily knew it was hot credit cards"; (3) that Mr. Brown's statements "raise[] some doubt [about the state's ability to prove Mr. Jackson knew credit card fraud was occurring]; and (4) that she "didn't believe there was enough at this point for the Court to necessarily consider revoking." The state moved to dismiss the petition to revoke in the '175 case and the fraud charge in the '620 case, and both motions were granted.

---

[1] It's undisputed that Officer Hynek gave his investigative file, including the recording of Gregory Brown's interview on July 22, 2016, to the LaPorte County Prosecutor's Office "within a day or two of July 22, 2016." [Doc. Nos. 30-4 at pp. 13-14 and 30-25 at pp. ].

III. *Discussion*

Mr. Jackson moved for partial summary judgment with respect to liability on his Fourth Amendment claim, contending that Officer Hynek violated his constitutional rights as a matter of law when he failed to return to the magistrate judge after interviewing Gregory Brown, to provide her with a copy of Mr. Brown's statement (which allegedly "undermined his earlier representations to the court" at the probable cause hearing), and to ask her to reconsider her probable cause determination. Citing, *i.e.*, United States v. Lewis, Cause No. 1:15-CR-10 TLS-SLC, 2016 WL 447520, at * 3-4 (N.D. Ind. Feb. 5, 2016); Jones v. Wilhem, 425 F.3d 455, 463-64 (7th Cir. 2005).

In response, the defendants filed a cross-motion for summary judgment on all claims. They contend that: (1) neither the facts nor the law support Mr. Jackson's Fourth Amendment claim; (2) Officer Hynek is entitled to qualified immunity on any claim that's based upon the theory that the Constitution obligates an officer to seek reconsideration of a probable cause determination after a warrant has been issued and executed; and (3) LaPorte County isn't a proper party to this litigation and neither the County nor the LaPorte County Sheriff's Department can be held vicariously liable for Officer Hynek's actions under § 1983, and the complaint alleges nothing more.

A. Section 1983 Claims

The defendants moved for summary judgment with respect to any claim based upon the theory that the Constitution obligates a law enforcement officer to return to the issuing magistrate to reconsider a finding of probable cause after a valid warrant has been issued and executed. Mr. Jackson's Fourth and Fourteenth Amendment claims clearly fall under that umbrella.

The amended complaint alleges that Officer Hynek violated "the fourth and fourteenth amendments to the U.S. Constitution [and] Indiana law" when he knowingly, intentionally, or recklessly made false and/or inaccurate statements in the information charging Mr. Jackson with conspiracy to commit fraud and at the probable cause hearing on July 18, 2016, and that Mr. Jackson was arrested and "illegally detained" from July 22, 2016 until June 8, 2017 as a result. [Doc. No. 20]. Mr. Jackson's constitutional claims are co-dependent. Absent a Fourth Amendment violation, Mr. Jackson can't prevail on his due process claim.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. Taylor v. Barkes, 135 S.Ct. 2042, 2044 (2015). In determining whether qualified immunity applies, a court considers: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation."

Locke v. Haessig, 788 F.3d 662, 667 (7th Cir. 2015). The answer to both questions in this case is no.

Mr. Jackson maintains Officer Hynek had, and breached, a constitutional duty to return to the magistrate judge after he interviewed Mr. Brown and provide her with a copy of Gregory Brown's statement, so that she could decide whether probable cause still existed. He says Officer Hynek isn't entitled to qualified immunity because it "has been clear since at least Franks v. Delaware, 438 U.S. 154 (1978) that falsifying the factual basis for a judicial probable-cause determination violates the Fourth Amendment." Lewis v. Chicago, 914 F.3d 472, 477 (7th Cir. 2019). But the undisputed facts in this case and the law don't support his argument.

A court "do[es] not view probable cause determinations with hindsight." Guzman v. City of Chicago, 565 F.3d 393, 396 (7th Cir. 2009). "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment", Maryland v. Garrison, 480 U.S. at 87 (quoting Hill v. California, 401 U.S. 797, 803-804 (1971)), and information acquired after a warrant has been issued generally "'has no bearing' on the probable cause analysis." *See* United States v. Bell, 925 F.3d 362, 372 (7th Cir. 2019) (quoting Guzman v. City of Chicago, 565 F.3d at 396). There are recognized exceptions, but this case doesn't fall within one of those exceptions.

Information that an officer acquires, or reasonably could have acquired, before or during the execution of a warrant can invalidate a warrant if it establishes a "definite and material" change in the facts underlying the probable cause determination. Maryland v. Garrison, 480 U.S. 79, 86-87 (1987); Jones v. Wilhelm, 425 F.3d 455, 463-464 (7th Cir. 2005); United States v. Bowling, 900 F.2d 926, 933 (6th Cir. 1990); United States v. Marin-Buitrago, 734 F.2d 889, 894 (2d Cir.1984); United States v. Lewis, Cause No. 1:15-CR-10 TLS-SLC, 2016 WL 447520, at *3 (N.D. Ind. Feb. 5, 2016). In those circumstances, an officer would have a duty to stop executing the warrant and "return to the neutral magistrate for a determination as to whether probable cause continue[d] to exist." Maryland v. Garrison, 480 U.S. at 86-87; Jones v. Wilhelm, 425 F.3d at 463-464 (7th Cir. 2005); United States v. Lewis, Cause No. 1:15-CR-10 TLS-SLC, 2016 WL 447520, at *3 (N.D. Ind. Feb. 5, 2016). So too, information acquired after a warrant is issued and executed can invalidate a warrant if it shows that a false statement was knowingly and intentionally, or recklessly, made in the affidavit or testimony submitted in support of the probable cause finding and was "necessary to th[at] finding." *See* Franks v. Delaware, 438 U.S. 154 (1978); United States v. McMurtrey, 704 F.3d 502, 508 (7th Cir. 2013); United States v. Lewis, Cause No. 1:15-CR-10 TLS-SLC, 2016 WL 447520, at *3 (N.D. Ind. Feb. 5, 2016).[2]

---

[2] The authorities Mr. Jackson cites in support of his motion provide nothing more. *See, e.g.*, Rainsberger v. Benner, 913 F.3d 640, 650 (7th Cir. 2019)("the Fourth Amendment is violated when the magistrate's probable cause determination is made

But Mr. Jackson doesn't challenge the validity of the warrant when it was issued, hasn't shown that Officer Hynek acquired any information before or during the execution of the warrant that would have triggered his duty to stop executing the warrant and return to the issuing magistrate for further consideration of whether probable cause still existed, and hasn't identified any definite and material error in the facts that Officer Hynek presented to the magistrate judge at the July 2016 probable cause hearing or in the charging information, much less demonstrated that he knowingly, intentionally, or recklessly falsified those facts. *See* United States v. McMurtrey, 704 F.3d 502, 508 (7th Cir. 2013) (defendant only entitled to *Franks* if he "make[s] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and…the allegedly false statement is necessary to the finding of probable cause.").

The cases on which Mr. Jackson relies in support of his motion – Jones v. Wilhelm, 425 F.3d 455, 463-464 (7th Cir. 2005) and United States v. Lewis, Cause No. 1:15-CR-10 TLS-SLC, 2016 WL 447520, at *3 (N.D. Ind. Feb. 5, 2016) – involved information acquired before or during the execution of a warrant, not

---

based on an affidavit that fails to establish probable cause"); Whitlock v. Brueggemann, 682 F.3d 567, 580 (7th Cir. 2012) (holding that "a police officer who manufactures false evidence against a criminal defendant violated due process if that evidence is later used to deprive the defendant of [his] liberty in some way."); Ouery v. State of Indiana, 745 N.E.2d 769, 772 (Ind. 2001) (holding that "[a] magistrate must be made aware of any 'material' new or correcting information obtained after a warrant was issued, but before it was executed); Ware v. State of Indiana, 859 N.E.2d 708, 718-19 (Ind. App. 2007) (same). [Doc. No. 30-1 at pp. 7-8].

after. It's undisputed that there was probable cause to issue the warrant for Mr. Jackson's arrest and that the warrant had already been executed when Sgt. Hynek interviewed Gregory Brown.

Gregory Brown's statements might have been exculpatory and led state prosecutors to question whether they could prove guilt beyond a reasonable doubt,[3] but "sufficient probability, not certainty" was all that was needed to find probable cause to arrest and detain Mr. Jackson. Officer Hynek had a duty to disclose exculpatory evidence under Brady v. Maryland, 373 U.S.83 (1963), *see* Youngblood v. West Virginia, 547 U.S. 867, 869-870 (2006) (per curium); Newsome v. McCabe, 256 F.3d 747, 752-753 (7th Cir. 2001), and it's undisputed that he provided his investigative file and Gregory Brown's recorded interview to the prosecutor shortly after the July 22, 2016 interview, and so fulfilled his duty. Beaman v. Fressmeyer, 776 F.3d 500, 512 (7th Cir. 2015) ("a police officer's *Brady* obligations are discharged by disclosing material exculpatory evidence to the prosecutor, for it is the prosecutor's responsibility to turn the evidence over to defense counsel").

Mr. Jackson hasn't presented any evidence that Officer Hynek knowingly, intentionally, or recklessly made false or inaccurate statements in the charging information or during his testimony at the probable cause hearing on July18,

---

[3] What Mr. Brown actually said during that interview is unknown. A transcript of the interview wasn't included in the summary judgment record before this court.

2016 or that he was detained without due process, and hasn't cited any authority that would impose a duty on Officer Hynek to return to the issuing judge, disclose Gregory Brown's statements, and seek reconsideration of her probable cause determination after a valid arrest warrant has been issued and executed. Officer Hynek is entitled to qualified immunity with respect to Mr. Jackson's claims under 42 U.S.C. § 1983, *see* Taylor v. Barkes, 135 S.Ct. at 2044; Locke v. Haessig, 788 F.3d at 667.

The court agrees that this shouldn't have happened to Mr. Jackson. For all that is shown in this summary judgment record, the video of the Gregory Brown interview lay unexamined in the prosecutor's office (and not necessarily the office of the prosecutor who ultimately viewed it) for more than two years. But this suit turns on what Andrew Hynek did and what the law required him to do. Officer Hynek had no legal duty to notify Judge Gettinger of what Mr. Brown had said, and once he turned the Brown statement over to the prosecutor, he had no legal duty to notify Mr. Jackson of what Mr. Brown had said.

With no actionable constitutional claim against Officer Hynek, Mr. Jackson can't prevail on his claims against LaPorte County and the LaPorte County Sheriff's Department, which are premised on vicarious liability and/or a duty to indemnify. *See* Monell v. New York City Dept. of Soc. Svcs., 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").

B. State Law Claims

The defendants acknowledge that Mr. Jackson hasn't specified the nature of his state law claims and that courts generally decline to exercise supplemental jurisdiction and dismiss state law claims without prejudice, when all federal claims have been dismissed prior to trial. Still, they ask the court to retain jurisdiction and dismiss Mr. Jackson's claims with prejudice because the facts don't support "any state common law claims against [Officer] Hynek" and allowing Mr. Jackson an opportunity to file another amended complaint in state court "would only prolong the inevitable: the ultimate dismissal of [his] claims." Citing Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 199); Alonzi v. Budget Construction Co., 55 F.3d 331, 334 (7th Cir. 1995). [Doc. Nos. 30-5 at p. 19-20 and 30-30 at p. 9].

What Mr. Jackson's state claims are and whether he could prevail remain to be determined. But the time for challenging the sufficiency of the complaint in this case has passed, and the defendants' motion for summary judgment with respect to Mr. Jackson's state law claims isn't supported by relevant law. The court declines to exercise supplemental jurisdiction over any state law claims that Mr. Jackson might have, and dismisses those claims without prejudice.

IV. *Conclusion*

For the foregoing reasons:

13

(1) The court DENIES Mr. Jackson's motion for partial summary judgment [Doc. No. 30].

(2) The court GRANTS the defendants' motion for summary judgment [Doc. No. 30-6] as to Mr. Jackson's federal claims, and DENIES it in all other respects.

(3) The court DISMISSES all remaining state law claims WITHOUT PREJUDICE for lack of subject matter jurisdiction.

SO ORDERED.

ENTERED:   March 20, 2020


    /s/ Robert L. Miller, Jr.
Judge
United States District Court